930 So.2d 761 (2006)
Toni BARONE, an individual, and Old District Promotions, Inc., a Florida corporation, Appellants,
v.
David ROGERS, an individual, John Lombardo, an individual, New Spirit, Inc., a Florida corporation, L.B.R. Assoc., Inc., a Florida corporation, Wilton Manors Properties, Inc., a Florida corporation, Four Buddies, Inc., a Florida corporation, and John Doe, an unknown individual, Appellees.
No. 4D05-1163.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
Rehearing Denied June 29, 2006.
*762 Kraig S. Weiss of Silverberg & Associates, P.A., Weston, for appellants.
David Mogul of Law Offices of David Mogul, P.A., Fort Lauderdale, for appellees.
WARNER, J.
The trial court entered an order enforcing a settlement agreement reached in open court. Appellant challenges that order, contending that the court erred in determining the terms of the settlement and failed to include an essential provision of the agreement. Because we conclude that the terms are ambiguous, we reverse.
The parties were co-owners of various bars and restaurants. Appellant, Toni Barone, sued her co-owners, David Rogers and John Lombardo, as well as their various corporations, alleging various causes of action, including breach of fiduciary duty and breach of contract. These claims arose out of Barone's removal as an officer and director in the four defendant corporations in which Barone was a minority shareholder. Barone was excluded from the management of the corporations after her removal. The parties reached a settlement agreement in February 2004, to be effective immediately, and the lawyers stated its terms on the record in court. Those terms ended up being disputed by the parties after the conclusion of the court proceedings.
The settlement agreement called for Rogers and Lombardo to transfer to Barone full ownership of the corporations involved with two bars, together with the liquor licenses. Barone would transfer to Rogers and Lombardo full ownership of the other two corporations, which controlled another restaurant and bar, together with the associated liquor license. All parties were to execute the necessary documents to effect these transfers. The parties agreed to each accept the "corporate status" as is, except they agreed to cooperate to minimize tax issues with respect to the transfers, e.g., possibly transferring the stock to a different name. In addition, Barone agreed to pay Lombardo $14,000 within five months, subject to his submitting documentation to her of his personal credit card debt for property which would remain in one of the bars being transferred to Barone. Failure to make payment would not undo the entire settlement but could be enforced by a monetary claim.
Barone's attorney also stated on the record that the parties made warranties and representations to each other. First, they warranted that all of the business conducted since January 1, 2004, was "in the ordinary course of business;" that there was no unusual commingling or taking of funds; that the books of the businesses would be produced within seven days; and that thereafter the parties would have thirty days to contest any improper transfers or commingling. Barone's attorney then *763 said, "There will be all reps and warranties, in the ordinary course of business, outstanding debts with the exception of one debt, TMT." The court questioned the parties regarding insurance coverage, and both attorneys stated that they represented that insurance would stay in place.
The court then asked the parties about an "evaluation of the liquor or the food on premises." Rogers and Lombardo's attorney stated that, "This is `as is.'" And the court again asked about what would occur if, for instance, the bar received purchases from the liquor supplier. Barone's attorney stated, "That's why we stipulated that there is nothing outside the ordinary course of business beyond the thirty days, save for the exception of that one electrical company." Rogers and Lombardo's attorney then said, "Other than as specifically provided, there are no adjustments for any debits, or credits, or any arrears, or for any monies coming in as we speak, or hereafter, subject to the terms of the accounting just agreed upon." The parties also agreed that should any dispute arise out of the settlement agreement, the prevailing party would be entitled to attorney's fees and costs. The parties were to follow up the announcement of settlement with a written agreement incorporating their understanding, but they could never agree to the terms of the writing.
Almost immediately, the parties were in dispute regarding the settlement. Barone discovered that the defendants owed over $50,000 for overdue bills that were incurred over thirty days prior to the settlement, which she contended breached the representations and warranties of the settlement agreement. She further complained that the documentation submitted by Lombardo to prove the expenditure of his personal funds on property in the bar Barone received was insufficient. After a significant period of time and several extensions for the exchange of documents with respect to the settlement, Barone moved to compel the signing of a settlement agreement. Rogers and Lombardo objected to its terms, claiming that the settlement agreement was an "as is" settlement agreement.
Eventually, the matter wound up in front of the court on Barone's motion to determine the pending settlement issues and to compel signatures on the settlement documents. It does not appear that this was an evidentiary hearing. The court reviewed the transcript of the announcement of the settlement and determined that the settlement was "as is" on the financial and physical condition of the corporate entities. It also determined that Barone agreed to pay Lombardo $14,000 within five months of the agreement. Although Barone contended that Lombardo and Rogers violated the settlement agreement by not effectively transferring the companies, the court found that they had fulfilled their obligations. It thus ordered Barone to execute various transfer documents for the liquor licenses and corporate filings and to pay the $14,000 to Lombardo.
Barone appeals this order of enforcement, contending that the court erred in its interpretation of the agreement as being an "as is" transaction. Specifically, she argues that the court erred in failing to include the terms regarding the warranties and representations with respect to unpaid bills that were older than thirty days; representations that there was no commingling of funds; and the requirement that Lombardo supply documentation that the $14,000 owed to him was for equipment purchased for the bar.
An agreement announced in open court is an enforceable settlement agreement. Cohen v. Cohen, 629 So.2d 909, 910 (Fla. 4th DCA 1993). As settlement *764 agreements are contractual in nature, they are interpreted and governed by contract law. Cheverie v. Geisser, 783 So.2d 1115, 1118 (Fla. 4th DCA 2001). Just as with other contracts, to be enforceable a settlement agreement "must be sufficiently specific and mutually agreeable as to every essential element." Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So.2d 669, 673 (Fla. 1st DCA 1997).
The interpretation of a contract is generally a question of law for the court. See DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427 (Fla.1990). However, where the wording of an agreement is ambiguous, its interpretation involves questions of fact, precluding summary disposition. See Ieracitano v. Shaw, 815 So.2d 787 (Fla. 4th DCA 2002); Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc., 513 So.2d 218 (Fla. 1st DCA 1987). Contracts are to be construed in accordance with the intentions of the parties. PS Marinas 3 v. Marina Funding Group, Inc., 889 So.2d 167, 169 (Fla. 3d DCA 2004). The determination of whether there is a meeting of the minds as to essential elements of an ambiguous contract requires a consideration of all of the surrounding circumstances. Id.
In the case before us, the terms of the settlement agreement announced in open court were ambiguous, at the very least. Contrary to the trial court's determination that it was an "as is" transfer of the corporations, throughout the transcript the parties agreed that the transfers of the corporate interests were subject to various representations and warranties, including a representation that all business for the past two months was "in the ordinary course of business." The court was told twice that there was a representation that there was nothing outside of thirty days, save for one electric bill. Rogers and Lombardo's attorney, however, also ambiguously stated that "other than as specifically provided, there are no adjustments for . . . any arrears." Both of these statements are ambiguous as to whether the settlement included a representation that there were no accounts owed by the businesses which were in arrears for more than thirty days. Further, the only provisions regarding the transaction being "as is" refer to the corporate status and to the current inventory of each bar.
The issue to be determined is whether there was a meeting of the minds regarding these ambiguous terms, or if not, whether the term was an essential element of the transaction such that without assent to its term no contract came into existence. See Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, 408 (Fla.1974) ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."). This is a question of fact, subject to proof. An evidentiary hearing on the issue is required.
As to the $14,000 payable to Lombardo, the agreement was clear and unambiguous that payment was subject to Lombardo providing proof that he personally paid for property remaining with the bar. Where the provision is clear, the standard of review is de novo, and the appellate court may reach a different interpretation than the trial court. Leisure Resorts, Inc. v. City of West Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003). Here the trial court erred in failing to condition the payment of the $14,000 on Lombardo's compliance with that clear contract provision. On remand, the trial court should make a factual determination as to whether Lombardo properly substantiated his entitlement to the $14,000.
*765 Because the court erred in determining, as a matter of law, that the contract was an "as is" contract, when the terms announced in open court were ambiguous or clearly contrary to those determined by the trial court, we reverse and remand for an evidentiary hearing on the interpretation of the settlement agreement.
Reversed.
GROSS and HAZOURI, JJ., concur.