# Third District Court of Appeal

## State of Florida

Opinion filed November 26, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2868
Lower Tribunal No. 10-1365-K
_____


**Dynamic Public Adjusters, Inc.,**
Appellant,

vs.

**Henry Rodriguez, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Monroe County, Tegan Slaton, Judge.

Alvarez, Carbonell, Feltman & DaSilva, PL, and Paul B. Feltman, for appellant.

Arnaldo Velez, P.A., and Arnaldo Velez, for appellee Henry Rodriguez.


Before WELLS and SUAREZ, JJ., and LEVY, Senior Judge.

PER CURIAM.

Dynamic Public Adjusters, Inc. ("Dynamic"), a licensed public adjusting company, appeals the trial court's order awarding Henry Rodriguez ("Rodriguez"),

an appraiser, a $400,000 fee stemming from the settlement of the two supplemental Hurricane Wilma claims filed by Key West Beach Club Condominium Association 1, Inc. and Key West Beach Club Condominium Association No. 2, Inc. (collectively, "the condominium associations") against their property insurer, Citizens Property Insurance Corporation ("Citizens"). We reverse the order under review and remand with instruction to enter a judgment awarding the $400,000 fee to Dynamic.

On October 24, 2005, Key West Beach Club Condominium 1 and 2 suffered damages as a result of Hurricane Wilma, and Citizens subsequently paid $1.2 million to the condominium associations for the loss. Thereafter, in April 2010, the condominium associations, unsatisfied with Citizens' original payment, retained Dynamic to pursue supplemental claims for the losses suffered as a result of Hurricane Wilma. Dynamic and the condominium associations entered into a Public Insurance Adjuster's Retainer Agreement ("the Public Adjuster's Agreement") whereby Dynamic agreed to act as the condominium associations' agent and representative during the adjustment of their supplemental claims against Citizens. This work included several inspections, estimates, and other activities to ascertain the value of the loss. In exchange, the condominium associations agreed to pay Dynamic "an amount equal to 20% of the gross amount of the collectible loss or damage recovered . . . regardless of whether the loss is settled or paid by

2

[Citizens] as a result of adjustment, mediation, appraisal, arbitration, lawsuit or otherwise." The Public Adjuster's Agreement further provided: "For supplemental or re-open claims, Public Adjuster's fee will be calculated only for claim payments or settlement obtained through the work of Public Adjuster after entering into this contract."

At the time Dynamic and the condominium associations entered into the Public Adjuster's Agreement, Rodriguez was working as a public adjuster apprentice for Dynamic. Rodriguez assisted Dynamic in preparing the inspection reports and estimates of loss submitted to Citizens on the condominium associations' behalf. Citizens reviewed these reports and estimates and denied the condominium associations' supplemental claims.

In October 2010, the condominium associations filed suit against Citizens seeking declaratory relief and damages for breach of the insurance policies. The trial court granted the condominium associations' motion to compel appraisal based on the terms of the insurance policies, which also granted the condominium associations the right to appoint one of the appraisers. By then, Rodriguez and Dynamic had suffered a falling out, and Rodriguez was no longer working for Dynamic. Rodriguez and the condominium associations entered into two Appraisal Agreements, in which Rodriguez agreed to act as the condominium associations' appraiser in exchange for 20% of the monies collected from Citizens

3

on the supplemental claims.

In the Appraisal Agreements, Rodriguez and the condominium associations recognized that the condominium associations had previously entered into an agreement with Dynamic for the supplemental claims, and that the condominium associations had already agreed to pay Dynamic 20% of the amount recovered by the condominium associations from Citizens in regard to the supplemental claims. Additionally, the Appraisal Agreements specifically capped the condominium associations' total combined obligations to Dynamic and Rodriguez at 20%, with Rodriguez's rights being inferior to Dynamic's. Specifically, the Appraisal Agreements stated:

> As a result [of the Public Adjuster's Agreement], Henry Rodriguez agrees that his 20% appraisal fee for this claim is subject to a reduction by any amounts that may become due to Dynamic under [the condominium associations'] agreement with Dynamic. The maximum obligation that may be incurred by [the condominium associations] for all monies that may become due to Henry Rodriguez and Dynamic collectively in regard to this appraisal shall not exceed 20% of the recovered amount. Henry Rodriguez shall defend and indemnify [the condominium associations] from any claims asserted by Dynamic which could result in payment by [the condominium associations] of more than 20% of the amount recovered from [Citizens] to Henry Rodriguez or Dynamic collectively.

The appraisal panel, which consisted of Rodriguez, Citizen's chosen appraiser, and the umpire appointed by the trial court, entered a revised appraisal award awarding the condominium associations approximately $3.7 million for the supplemental claims. After the appraisal process was completed, several coverage

4

issues regarding the supplemental claims remained pending. Rather than litigating those issues, however, Citizens and the condominium associations settled the supplemental claims for $2 million.

Rodriguez and Dynamic both intervened in the action, with both asserting an interest in the condominium associations' recovery from Citizens based on their respective fee arrangements. The trial court ordered the condominium associations' counsel to retain the disputed $400,000 fee (20% of the $2 million settlement) in his trust account pending resolution.

Following a non-jury trial on Rodriguez's and Dynamic's claims, the trial court entered an order awarding Rodriguez the entire $400,000 fee. In doing so, the trial court found that the settlement of the supplemental claims "was the direct product of the efforts of Rodriguez conducted on behalf of the condominium associations pursuant to the appraisal agreements with [the condominium associations]." Therefore, the settlement "did not result as 'the work of the Public Adjuster' as specified by Dynamic's Public Insurance Adjuster's Retainer Agreement but rather as a product of the appraisal process." Dynamic appeals the trial court's determination that Rodriguez is entitled to the $400,000 fee.

Dynamic contends that the trial court erred in construing the Public Adjuster's Agreement and awarding the $400,000 fee to Rodriguez. Based on our de novo review of the Public Adjuster's Agreement and the Appraisal Agreements,

5

we agree. See Real Estate Value Co. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA 2012) ("The interpretation of a contract . . . is a matter of law subject to de novo review."); Muniz v. Crystal Lake Project, LLC, 947 So. 2d 464, 469 (Fla. 3d DCA 2006) ("The interpretation of a contract involves a pure question of law for which [an appellate] court applies a *de novo* standard of review."); Barone v. Rogers, 930 So. 2d 761, 764 (Fla. 4th DCA 2006) (holding that when a contract provision is clear and unambiguous, "the standard of review is *de novo*, and the appellate court may reach a different interpretation than the trial court"). In the instant case, the Public Adjuster's Agreement is clear that Dynamic is entitled to 20% of the settlement between Citizens and the condominium associations; and the Appraisal Agreements are clear that Rodriguez's 20% interest in the settlement proceeds are subordinate to Dynamic's. Because the condominium associations can only pay a maximum total of 20%, the full 20% must go to Dynamic.

Pursuant to the Public Adjuster's Agreement, the condominium associations agreed to pay Dynamic 20% of the gross amounts recovered from Citizens on the condominium associations' supplemental claims "**regardless of whether the loss is settled or paid by [Citizens] as a result of adjustment, mediation, appraisal, arbitration, lawsuit or otherwise** . . . ." (Emphasis added). Simply put, the parties contemplated that settlement or payment of the loss may not occur during Dynamic's adjustment of the supplemental claims, but Dynamic would be entitled

to 20% of **any** recovery from Citizens regardless of the method of that recovery. Indeed, the condominium associations agreed to pay Dynamic the 20% contingency fee "regardless" of whether the payment or settlement was as the result of a lawsuit, appraisal, or "otherwise." Therefore, as the settlement of the supplemental claims was a result of the appraisal process, we conclude that Dynamic is entitled to the $400,000 contingency fee under the terms of the Public Adjuster's Agreement.

The trial court's determination that Dynamic was not entitled to the contingency fee under the Public Adjuster's Agreement was simply a misinterpretation of the following provision in the Public Adjuster's Agreement: "For supplemental or re-open claims, Public Adjuster's fee will be calculated only for claim payments or settlement **obtained through the work of Public Adjuster** after entering into this contract." (Emphasis added). This provision merely provides that the calculation of Dynamic's fee will be based only on payments made by Citizens on the supplemental claims and would not include the $1.2 million Citizens had already paid.[1] It does not mean that Dynamic would recover

_____

[1] The contractual provision is consistent with section 626.854(11)(a), Florida Statutes (2011), which provides:

> If a public adjuster enters into a contract with an insured . . . to reopen a claim or file a supplemental claim that seeks additional payments for a claim that has been previously paid in part or in full or settled by the insurer, the public adjuster may not charge, agree to, or accept any compensation, payment, commission, fee, or other thing of value

its 20% contingency fee only if Citizen's payment resulted directly from Dynamic's initial adjustment and request for payment of the supplemental claims.

Finally, in the Appraisal Agreements, the condominium associations and Rodriguez agreed that the condominium associations' total obligations to Dynamic and Rodriguez combined was capped at 20% of the condominium associations' recovery from Citizens on the supplemental claims. Rodriguez's share, if any, was to be paid only after Dynamic received its portion. In agreeing to act as the condominium associations' appraiser, particularly since he already knew that Dynamic was contractually entitled to 20% of the recovery, Rodriguez assumed the risk of not being paid for his services. As we have determined that the condominium associations are required to pay Dynamic the 20% contingency fee ($400,000) under the Public Adjuster's Agreement, and the condominium associations cannot pay more than 20% under any circumstances, Rodriguez is contractually entitled to 0% of the $400,000 fee under the Appraisal Agreement.

Rodriguez took the risk that he would not recover his 20% fee by expressly

> based on a previous settlement or previous claim payments by the insurer for the same cause of loss. The charge, compensation, payment, commission, fee, or other thing of value must be based only on the claim payments or settlement **obtained through the work of the public adjuster after entering into the contract** with the insured or claimant. Compensation for the reopened or supplemental claim may not exceed 20 percent of the reopened or supplemental claim payment. . . .

(Emphasis added).

8

subordinating his rights to those of Dynamic. Rodriguez's gamble did not pay off, and he cannot now seek to undo Dynamic's legally negotiated contract because his own bargain was poorly struck.

Accordingly, we reverse the order review and remand with instructions to enter a final judgment awarding the entire $400,000 fee to Dynamic.