DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRICKELL FINANCIAL SERVICES – MOTOR CLUB, INC.** d/b/a
**ROAD AMERICA MOTOR CLUB** and
**ROAD AMERICA MOTOR CLUB, INC.**,
Appellant,

v.

**ROAD TRANSPORTATION, LLC** d/b/a **ROADSIDEMASTERS.COM**,
Appellee.

Nos. 4D19-986 and 4D19-1481

[June 10, 2020]

Consolidated appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Roger B. Colton, Senior Judge, and Cymonie Rowe, Judge; L.T. Case No. 502018CA003044.

Kristen M. Fiore of Akerman LLP, Tallahassee, and Christine B. Gardner of Akerman LLP, West Palm Beach, for appellant.

Steven M. Katzman and Charles J. Bennardini of Katzman Wasserman Bennardini & Rubinstein, P.A., Boca Raton, for appellee.

GERBER, J.

Brickell Financial Services – Motor Club, Inc. d/b/a Road America Motor Club and Road America Motor Club, Inc. ("the servicer") appeals from the trial court's final judgment and costs judgment in favor of Road Transportation, LLC d/b/a Roadsidemasters.com ("the marketer"). The servicer primarily argues the trial court erred in: (1) finding the term "Settlement Sum" in the parties' mediation agreement unambiguously referred to a $350,000 sum referenced in the agreement, and (2) prohibiting the servicer's representative from testifying about the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred.

We agree with the servicer's arguments. The mediation agreement, either intentionally or inadvertently, referred to two different sums: the "Settlement Sum," for which a dollar amount is not identified, "***and*** the amount referenced in paragraph 1a above" which stated "a total of

$350,000 that would otherwise be owed, as commissions." (emphases added). Because the mediation agreement, at least facially, referred to the "Settlement Sum" and the $350,000 as two different sums, the trial court erred in finding the term "Settlement Sum" unambiguously referred to the $350,000 sum referenced in the agreement. As a result of that error, the trial court further erred in prohibiting the servicer's representative from testifying about the parties' mediation discussions regarding the dollar amount to which the term "Settlement Sum" referred. Thus, we reverse the trial court's final judgment and costs judgment in the marketer's favor. We remand for a new trial.

We present this opinion in three sections:
1. The pre-trial history;
2. The non-jury trial; and
3. Our review.

## 1. *The Pre-Trial History*

For several years, the servicer and the marketer participated in a business relationship which they internally described as "AAA for trucks." The servicer provided roadside assistance services to truckers, and the marketer sold those services as memberships to trucking companies.

The parties' relationship was governed by an agency agreement. Under the agreement, the marketer would collect gross membership fees from the trucking companies, and then would transfer such fees, minus the marketer's commissions, to the servicer. The agreement further provided, "In case of any dispute arising from, or in connection with the subject matter of this Agreement, including the interpretation or enforcement of this Agreement … any such dispute shall be submitted for mandatory mediation."

Some years into the parties' relationship, the servicer sent a mediation demand to the marketer. The servicer alleged the marketer had breached the agency agreement by retaining $765,189.70 in fees which the marketer should have transferred to the servicer.

After mediation, the parties executed a mediation agreement. The mediation agreement centered around the disposition of membership fees being paid by a substantial client, Arrow Truck Sales, Inc. ("Arrow"). The mediation agreement's primary provision reads, in pertinent part:

> 1. [The marketer] shall pay to [the servicer], and [the servicer] shall accept from [the marketer], the Settlement Sum, which

2

shall be in full and complete payment and settlement of any and all claims by and among the parties. *The Settlement Sum shall be paid as follows: a) [the servicer] is entitled to receive a total of $350,000 that would otherwise be owed, as commissions, to [the marketer] pursuant to the parties contract with Arrow ([the servicer] estimates that it is holding $260,000 of that amount); b) [the marketer] hereby assigns its right to receive all funds owed to it under the parties contract with Arrow until the Settlement Sum **and** the amount referenced in paragraph 1a above is paid in full;* c) once the Settlement Sum is paid in full, [the marketer's] assignment of its right to payment under the parties contract with Arrow shall terminate and [the marketer] shall then start receiving its contractual right to monies under the parties' contract with Arrow; and d) in the event that the parties' relationship with Arrow terminates before the Settlement Sum is paid in full, [the marketer] shall pay [the servicer] $20,000 per month until the Settlement Sum is paid in full.

(emphases added). At the time of the mediation agreement, the exact dollar amount which the servicer was holding from Arrow was $257,725, thus fairly close to the $260,000 estimated in section 1a.

Sometime later, the servicer sent a settlement accounting to the marketer. The servicer's settlement accounting indicated the marketer originally owed $765,189.70 to the servicer, but the servicer agreed in the settlement to write off $139,563.15, leaving a balance of $625,626.55. From that balance, the servicer's settlement accounting further deducted the $257,725 in the marketer's commissions from Arrow which the servicer already had received, thus leaving a "Total Due" of $367,901.55.

The marketer objected to the servicer's settlement accounting as not accurately reflecting the settlement. Sometime later, the marketer filed a one-count breach of contract complaint against the servicer. The marketer alleged the "Settlement Sum" under the mediation agreement was $350,000, and the servicer breached the mediation agreement by receiving more funds than the marketer owed under the mediation agreement.

The servicer filed an answer and affirmative defenses denying the marketer's allegations. One of the servicer's affirmative defenses alleged no meeting of the minds existed in forming the mediation agreement.

## 2. *The Non-Jury Trial*

At the non-jury trial, the marketer's opening statement indicated the evidence would show the "Settlement Sum" under the mediation agreement was $350,000. The servicer's opening statement indicated the "Settlement Sum" was the approximate $625,000 amount shown in its settlement accounting after deducting the servicer's $139,563.15 write-off from the $765,189.70 which the marketer owed to the servicer.

The marketer began its case-in-chief by calling the servicer's representative as an adverse witness. The servicer's representative acknowledged that the dollar amount "$625,000" did not appear anywhere in the mediation agreement.

The marketer then had its representative testify on direct examination that the "Settlement Sum" under the mediation agreement was $350,000.

On cross-examination, the marketer's representative was shown the servicer's settlement accounting, and acknowledged $765,189.70 was the amount which the servicer asserted was owed before the mediation; $139,563.15 was the amount which the servicer had agreed to write off as part of the settlement; $257,725.00 was the amount of Arrow commissions which the marketer had agreed to waive as part of the settlement; and the line showing "Total Due" indicated "367,901.55."

However, the marketer's representative insisted the servicer's settlement accounting indicated the marketer only had to pay the servicer an additional $92,275 to satisfy the mediation agreement, as the difference between the marketer's understanding of the $350,000 "Settlement Sum" minus the $257,725 which the servicer already had received.

During the servicer's case-in-chief, the servicer's counsel sought to ask the servicer's representative about the parties' mediation communications regarding the settlement amount. The marketer's counsel objected, arguing mediation communications were confidential by statute.

The servicer's counsel responded the settlement amount was unclear from the mediation agreement, and a confidentiality exception existed when an issue arose regarding a mediation agreement's terms. Thus, the servicer's counsel requested the trial court to allow evidence to explain the settlement amount to which the mediation agreement referred.

The trial court ruled the mediation communications were confidential, and only permitted the servicer's representative to testify about the dollar

amount which the servicer first sought during the mediation. The servicer's representative testified the servicer first sought $765,000.

The servicer's counsel then asked the servicer's representative about the dollar amounts appearing on the servicer's settlement accounting. The servicer's representative testified the servicer had deducted from the $765,189.70 "total due" both the $139,563.15 write-off and the $257,725 in the marketer's commissions received from Arrow before mediation.

During closing arguments, the marketer reiterated its position that the mediation agreement clearly defined the "Settlement Sum" as $350,000.

In contrast, the servicer argued the mediation agreement was ambiguous by not identifying the dollar amount to which "Settlement Sum" referred, and thus no meeting of the minds may have occurred on that amount. According to the servicer, the $367,901.55 amount identified in servicer's settlement accounting was the compromised amount which the marketer owed to the servicer after the $139,563.15 write-off and the $257,725 received from Arrow were subtracted from the servicer's claim entering the mediation.

The trial court issued a final judgment in the marketer's favor. The trial court found the terms of the mediation agreement were clear and unambiguous, and the "Settlement Sum" under the mediation agreement was $350,000. The trial court further found that because the servicer had received not only the $350,000 from Arrow, but also an additional $412,698.86 in commissions which the marketer should have received from Arrow, the servicer owed the marketer that $412,698.86 surplus, plus pre-judgment interest on that amount.

Another judge later entered a costs judgment in the marketer's favor. The servicer appealed from the both the final judgment and the costs judgment. We consolidated both appeals for our review.

### 3. *Our Review*

On appeal, the servicer primarily argues the trial court erred in: (1) finding the term "Settlement Sum" in the parties' mediation agreement unambiguously referred to the $350,000 sum referenced in the agreement, and (2) prohibiting the servicer's representative from testifying about the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred.

In contrast, the marketer primarily argues: (1) the mediation agreement clearly defined the "Settlement Sum" as $350,000, and (2) the parties' mediation communications regarding the dollar amount to which "Settlement Sum" referred were confidential by statute.

We agree with the servicer's arguments. We address each argument in turn.

### a. *The trial court erred in finding the term "Settlement Sum" in the parties' mediation agreement unambiguously referred to the $350,000 sum referenced in the agreement.*

"[S]ettlement agreements are interpreted like a contract and reviewed de novo." *Marlin Yacht Mfg., Inc. v. Nichols*, 254 So. 3d 1022, 1024 (Fla. 4th DCA 2018). Further, "[w]hether a contract is ambiguous is reviewed de novo." *E-Commerce Coffee Club v. Miga Holdings, Inc.*, 222 So. 3d 9, 11 (Fla. 4th DCA 2017).

"As settlement agreements are contractual in nature, they are interpreted and governed by contract law. Just as with other contracts, to be enforceable a settlement agreement must be sufficiently specific and mutually agreeable as to every essential element." *Barone v. Rogers*, 930 So. 2d 761, 763-64 (Fla. 4th DCA 2006) (citations and internal quotation marks omitted). "However, where the wording of an agreement is ambiguous, its interpretation involves questions of fact, precluding summary disposition." *Id.* at 764.

A patent ambiguity, i.e., an ambiguity appearing on an agreement's face, may arise due to the agreement's use of an undefined essential term. *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 716 (Fla. 4th DCA 2017). "[C]ourts allow parol evidence regarding identity, capacity, and the parties' relationship with one another even when the ambiguity exists on the face of the document because the court would not be rewriting the terms of the contract." *Id.* (emphasis and citations omitted).

Applying de novo review here, we conclude a patent ambiguity appears on the mediation agreement's face. The mediation agreement's primary provision reads, in pertinent part:

1. [The marketer] shall pay to [the servicer], and [the servicer] shall accept from [the marketer], the Settlement Sum, which shall be in full and complete payment and settlement of any and all claims by and among the parties. *The Settlement Sum shall be paid as follows: a) [the servicer]*

6

> *is entitled to receive a total of $350,000 that would otherwise be owed, as commissions, to [the marketer] pursuant to the parties contract with Arrow ([the servicer] estimates that it is holding $260,000 of that amount); b) [the marketer] hereby assigns its right to receive all funds owed to it under the parties contract with Arrow until the Settlement Sum **and** the amount referenced in paragraph 1a above is paid in full; c) once the Settlement Sum is paid in full, [the marketer's] assignment of its right to payment under the parties contract with Arrow shall terminate and [the marketer] shall then start receiving its contractual right to monies under the parties' contract with Arrow; and d) in the event that the parties' relationship with Arrow terminates before the Settlement Sum is paid in full, [the marketer] shall pay [the servicer] $20,000 per month until the Settlement Sum is paid in full.*

(emphases added).

As emphasized above, the mediation agreement, either intentionally or inadvertently, referred to two different sums: the "Settlement Sum," for which a dollar amount is not identified, "**and** the amount referenced in paragraph 1a above" which stated "a total of $350,000 that would otherwise be owed, as commissions." (emphases added). Because the mediation agreement, at least facially, referred to the "Settlement Sum" and the $350,000 as two different sums, the trial court erred in finding the term "Settlement Sum" unambiguously referred to the $350,000 sum referenced in the agreement.

Further, because of the patent ambiguity as to the dollar amount to which the term "Settlement Sum" referred, its interpretation involved a question of fact, precluding the trial court's summary disposition in the marketer's favor. Parol evidence was required to either identify the mutually-agreed "Settlement Sum" dollar amount or determine no meeting of the minds existed as to this essential term, thus precluding the mediation agreement's formation. *See Barone*, 930 So. 2d at 764-65 (an evidentiary hearing was required to determine whether a meeting of the minds existed regarding a settlement agreement's term or, if not, whether the disputed term was an essential element such that without assent to the term no contract came into existence).

Based on the foregoing, the proper remedy is to remand for a new trial, at which the trial court shall consider parol evidence regarding the dollar amount to which the term "Settlement Sum" referred.

***b. The trial court erred in prohibiting the servicer's representative from testifying about the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred.***

Section 44.405, Florida Statutes (2018), states, in pertinent part:

(1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel. A violation of this section may be remedied as provided by s. 44.406. If the mediation is court ordered, a violation of this section may also subject the mediation participant to sanctions by the court, including, but not limited to, costs, attorney's fees, and mediator's fees.

(2) A mediation party has a privilege to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications.

....

(4)(a) Notwithstanding subsections (1) and (2), *there is no confidentiality or privilege* attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or *for any mediation communication*:

....

5. *Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation ....*

....

§ 44.405, Fla. Stat. (2018) (emphasis added).

No reported case appears to have addressed an appellate court's standard of review of a trial court's decision under section 44.405(4)(a)5., regarding whether a confidentiality or privilege attaches to a mediation communication "[o]ffered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement

8

reached during a mediation." However, our sister court, citing a variety of other recognized privileges, has held that "[w]hether a privilege exists, as well as its parameters, is subject to de novo review." *Traffanstead v. State*, 290 So. 3d 985, 987-88 (Fla. 1st DCA 2019) (citations omitted).

We agree with our sister court's observation. Thus, we conclude the standard of review of a trial court's decision under section 44.405(4)(a)5., regarding whether a confidentiality or privilege attaches to a mediation communication "[o]ffered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation," is de novo.

Applying de novo review, we conclude the trial court erred in prohibiting the servicer's representative from testifying about the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred. The servicer's purpose for offering that testimony clearly was for "the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation." § 44.405(4)(a)5., Fla. Stat. (2018). The legally recognized ground at issue here, as pled in the servicer's affirmative defenses, was whether a meeting of the minds occurred in forming the mediation agreement. We recognize the possibility that a meeting of the minds may not have occurred, because the mediation agreement, either intentionally or inadvertently, referred to the "Settlement Sum" and the $350,000 as two different sums, and did not identify the dollar amount to which "Settlement Sum" referred.

As stated above, the proper remedy is to remand for a new trial, at which the trial court shall consider the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred.

We are not prepared to consider, as the servicer requests, whether the "Settlement Sum" was the $625,626.55 which the servicer calculated in its settlement accounting (by subtracting the $139,563.15 write-off from the alleged $765,189.70 amount owed). Because the trial court ultimately did not consider the settlement accounting based on its errant interpretation that the mediation agreement was unambiguous, our consideration of the settlement accounting's weight would be premature.

However, on remand, the trial court shall weigh the settlement accounting, along with the parties' mediation communications, and any other admissible evidence, in determining whether a meeting of the minds occurred regarding the dollar amount to which the term "Settlement Sum" referred and, if so, what that amount was.

### c. *Our conclusion is consistent with our precedent on this topic.*

Our conclusion is consistent with our prior decision in *DR Lakes Inc. v. Brandsmart U.S.A. of West Palm Beach, Inc.,* 819 So. 2d 971 (Fla. 4th DCA 2002), which pre-dated the legislature's enactment of section 44.405 in 2004, but interpreted section 44.405's predecessor, section 44.102(3), Florida Statutes (2001). *Id.* at 972-74. We shall examine *DR Lakes* in detail, as its facts and reasoning are quite similar to the instant case.

*DR Lakes* involved a real estate transaction between the appellant seller and the appellee buyer. *Id.* at 972. The parties' original agreement provided the buyer was to receive a $600,000 credit to defray the expense of constructing a road necessary for the property's development. *Id.*

Before the transaction closed, a dispute arose between the buyer and seller, resulting in litigation. *Id.* at 973. After mediation, the parties entered into a settlement agreement which obligated the seller, in the event the road could be built in phases, to construct the road's first phase. *Id.*

The seller later filed a motion to enforce the settlement agreement, alleging the agreement contained a clerical error. *Id.* More specifically, the seller argued the parties had agreed in mediation that the buyer would no longer be entitled to the $600,000 credit, because the obligation to build the road had been shifted from the buyer to the seller. *Id.* However, the seller argued, the mediation agreement inadvertently still provided the buyer with the $600,000 credit. *Id.*

At an evidentiary hearing on the motion to enforce settlement, the buyer objected to testimony regarding the parties' mediation communications, based on section 44.102(3), Florida Statutes (2001), which then provided:

> Each party involved in a court-ordered mediation proceeding has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding. All oral or written communications in a mediation proceeding, other than an executed settlement agreement, shall be exempt from the requirements of chapter 119 [public meeting and record requirements] and shall be confidential and inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise.

819 So. 2d at 973.

The trial court agreed with the buyer that section 44.102(3) precluded any evidence as to what occurred during mediation. *Id.*

We reversed, reasoning in pertinent part:

> The reason for confidentiality as to statements made during mediation where a settlement agreement is not reached is obvious. Mediation could not take place if litigants had to worry about admissions against interest being offered into evidence at trial, if a settlement was not reached. ***Once the parties in mediation have signed an agreement, however, the reasons for confidentiality are not as compelling*** ....
>
> ... We cannot imagine that the legislature intended that a party to a contract reached after mediation should not have the same access to the courts to correct a $600,000 mutual mistake, as a party entering into the same contract outside of mediation. We therefore hold that the privilege does not bar evidence as to what occurred at mediation under the facts in this case.
>
> On remand, in order to be entitled to relief, seller will have to establish that this clerical error was a mutual mistake, as described in *Steffens v. Steffens*, 422 So. 2d 963 (Fla. 4th DCA 1982):
>
>> When an instrument is drawn and executed which is intended to carry into execution an agreement but which by mistake of the draftsman violates or does not fulfill that intention, equity will reform the instrument so as to conform to the intent of the parties. Relief should be given where, through a mistake of the scrivener, the instrument contains a clerical error ***or fails to define the terms as agreed on by the parties***.
>
> Although it may be difficult for seller to prove that this mistake was mutual, given the position of the buyer, seller should still have the opportunity to put on all of its evidence.

*Id.* at 973-75 (emphasis added; other internal citations and footnote omitted).

11

Despite the difficulty which we predicted for the seller on remand, the trial court, after a non-jury trial, ruled in the seller's favor. *BrandsMart U.S.A. of West Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1005 (Fla. 4th DCA 2005). The trial court found the parties had agreed the buyer would no longer be entitled to the $600,000 credit, and "[t]o the extent the [mediation agreement] was not explicit on that point, it represented a scrivener's error in memorialization of the parties' agreement." *Id.*

We affirmed, concluding the seller's witnesses' testimony constituted competent, substantial evidence supporting the trial court's ruling. *Id.* at 1006. We further noted: "The parties' conflicting stories at trial do not preclude a finding that a mutual mistake was established by clear and convincing evidence." *Id.*

The reasoning upon which we based our first *DR Lakes* decision appears to have been statutorily codified two years later when the legislature enacted section 44.405(4)(a)5. That is, after initially stating in section 44.405(1) that "all mediation communications shall be confidential," the legislature created an exception in section 44.405(4)(a)5. for any mediation communication "[o]ffered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation." That exception applies to the instant case.

## *Conclusion*

Based on the foregoing, we reverse the trial court's final judgment in the marketer's favor, and we remand for a new trial. At the new trial, the trial court shall consider the parties' mediation communications regarding the dollar amount to which the term "Settlement Sum" referred, along with the servicer's settlement accounting and any other admissible evidence, in finding whether a meeting of the minds occurred regarding the dollar amount to which the term "Settlement Sum" referred and, if so, what that amount was. Of course, should the trial court find from the evidence that no meeting of the minds occurred, the trial court shall decline to enforce the purported mediation agreement and shall proceed with the cause. *See A-1 Duran Roofing, Inc. v. C.M.R. Prop., Inc.*, 903 So. 2d 299, 299 (Fla. 3d DCA 2005) ("After taking the testimony the trial court shall determine whether these persons had a meeting of the minds reaching a full and complete settlement of the cause. If the trial court finds that such a meeting of the minds occurred, then the trial court shall enforce the terms thereof exactly as reached. Should the trial court find from the testimony

that no meeting of the minds occurred it shall decline to enforce any purported settlement agreement and shall proceed with the cause.").

For purposes of the remand, we remind the parties and the trial court that "[t]he party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002). Further, "[a] trial court's finding that there was a meeting of the minds must be supported by competent substantial evidence." *Id.* As the marketer has been the party seeking to enforce the mediation agreement (alleging $350,000 as the "Settlement Sum"), while the servicer is relying in part on its affirmative defense that no meeting of the minds occurred, the marketer shall bear the burden of showing the marketer assented to the mediation agreement.

Because we are reversing the trial court's final judgment in the marketer's favor, we also must reverse the trial court's costs judgment in the marketer's favor. *See Mulato v. Mulato*, 734 So. 2d 477, 478 (Fla. 4th DCA 1999) ("[W]here the judgment on which a cost judgment is predicated is reversed, the original cost judgment also cannot stand.") (citation omitted).

All other arguments which the marketer has raised in the defense of this consolidated appeal lack merit, without further discussion.

*Reversed and remanded for proceedings consistent with this opinion.*

GROSS and FORST, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

13